| | |
|---|---|
| 1 | STEPHEN G. LARSON (SBN 145225) |
| 2 | Email: slarson@larsonobrienlaw.com |
|   | PAUL A. RIGALI (SBN 262948) |
| 3 | Email: prigali@larsonobrienlaw.com |
| 4 | R.C. HARLAN (SBN 234279) |
|   | Email: rcharlan@larsonobrienlaw.com |
| 5 | LARSON O'BRIEN LLP |
| 6 | 555 S. Flower Street, Suite 4400 |
|   | Los Angeles, California 90071 |
| 7 | Telephone: (213) 436-4888 |
| 8 | Facsimile: (213) 623-2000 |
| 9 | Attorneys for Petitioners |
|   | MARCIANO ABADILLA, et al. |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MARCIANO ABADILLA, et al. | Case No. 3:18-cv-07343-KAW |
| Petitioners, | **PETITIONERS MARCIANO ABADILLA, ET AL.'S MOTION TO COMPEL ARBITRATION** |
| v. | Date: January 17, 2019 |
| UBER TECHNOLOGIES, INC., | Time: 1:30 p.m. |
| Respondent. | Judge: Hon. Kandis A. Westmore |
| | *[Declaration of Paul A. Rigali in support and [Proposed] Order filed concurrently herewith]* |
| | Action Filed: December 5, 2018 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, January 17, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard in the above court, before the Honorable Kandis A. Westmore, the judge assigned to this matter, United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, California 94612, Petitioners will and hereby do move this Court, pursuant to 9 U.S.C. §§ 3 and 4, for an Order to compel Defendant Uber Technologies to arbitrate Petitioners' claims in this action.

This Petition is based on this Notice of Petition, the attached Memorandum of Points and Authorities, the Declaration of Paul Rigali, all records on file with this Court, and such other and further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

Dated: December 5, 2018   LARSON O'BRIEN LLP


By: */s/ Stephen G. Larson*
　　STEPHEN G. LARSON
　　PAUL A. RIGALI
　　R.C. HARLAN

Attorneys for Petitioners
MARCIANO ABADILLA, et al.

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 5 |
| II. BACKGROUND | 6 |
|    A. Uber's Arbitration Provisions. | 6 |
|    B. Uber Has Aggressively Touted Arbitration's Benefits. | 8 |
|    C. Uber Has Successfully Enforced Its Arbitration Provisions To Deny Class Treatment Of Petitioners' Causes of Action. | 8 |
|    D. Petitioners' Arbitration Demands And Uber's Stalling Tactics. | 9 |
| III. STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) | 12 |
| IV. ARGUMENT | 12 |
|    A. The Parties Have Entered Into A Valid Arbitration Agreement That Covers The Present Dispute. | 12 |
|       1. The parties have entered into a valid arbitration agreement. | 13 |
|       2. The arbitration agreement covers the present dispute. | 13 |
|       3. Petitioners are following the Ninth Circuit's rulings in *Mohamed* and *O'Connor*. | 14 |
|    B. The Court Should Enforce The Arbitration Provisions And Require Uber To Timely Pay Outstanding Arbitration Fees. | 15 |
| V. CONCLUSION | 16 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bridgeport Mgmt., Inc. v. Lake Mathews Mineral Props., Ltd.*,
   2014 WL 953831 (N.D. Cal. Mar. 6, 2014)..................................................................13

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ......................................................................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ......................................................................................13

*Garcia v. Mason Contract Prods., LLC*,
   2010 WL 3259922 (S.D. Fla. Aug. 18, 2010)...............................................................16

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)........................................................................................................13

*McLellan v. Fitbit, Inc.*,
   2018 WL 3549042 (N.D. Cal. July 24, 2018)...............................................................16

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ...................................................................9, 13, 14, 15

*O'Connor v. Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) ...............................................................................5, 9, 14

*Pre-Paid Legal Servs., Inc. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) ....................................................................................16

*Rapaport v. Soffer*,
   2011 WL 1827147 (D. Nev. May 12, 2011).................................................................16

*Roldan v. Callahan & Blaine*,
   219 Cal. App. 4th 87 (2013) .........................................................................................15

*Sink v. Aden Enterprise*,
   352 F.3d 1197 (9th Cir. 2003) ......................................................................................16

*Stowell v. Toll Bros*,
   2007 WL 30316 (E.D. Pa. Jan. 4, 2007)......................................................................16

*Unite Here Int'l Union v. Shingle Spring Band of Miwok Indians*,
   2016 WL 4041255 (E.D. Cal. July 25, 2016)...............................................................13

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Weiler v. Marcus & Millichap Real Estate Investment Servs., Inc.*,
    22 Cal. App. 5th 970, 981 ..................................................................................................15

**Federal Statutes**

9 U.S.C.
    § 3................................................................................................................................16
    §§ 3 and 4......................................................................................................................1
    § 4..........................................................................................................................12, 16

## I. INTRODUCTION

Two recent Ninth Circuit rulings have established that individual arbitration is the only vehicle for Uber drivers to vindicate their legal rights. This petition arises out of Uber's attempt to deprive its drivers of even that option for pursuing their claims, by intentionally flouting its obligation to pay the costs of arbitration for these individual arbitrations. Petitioners are 12,501 Uber drivers across numerous states who signed agreements requiring them to arbitrate their disputes with Uber. Many Petitioners were putative class members in *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018), wherein the Ninth Circuit ruled in Uber's favor by requiring individual arbitrations. Under binding Ninth Circuit case law, Petitioners must submit individual arbitration demands to challenge their classification as independent contractors, and Petitioners have done so. But Uber—after litigating for years to force individual rather than class arbitration— has refused to pay the necessary arbitration costs for **all but six** of these demands, thereby preventing commencement and administration of the promised arbitration and violating the very arbitration provisions it has so desperately sought to enforce in this Court. This conduct is manifestly unfair to Petitioners, who have no other forum for relief.

The Court should grant this Petition for at least two reasons. *First*, the arbitration agreement Petitioners signed is valid and requires them to arbitrate. Petitioners drove for Uber subject to the terms and conditions of the arbitration provision, which covers "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services." (Declaration of Paul Rigali ("Rigali Decl."), Ex. A [Raiser Agreement] at § 15.3.) There is no question that Petitioners' misclassification-based claims fit the bill. Indeed, Uber compelled arbitration when other drivers previously brought these exact claims in this Court.

///

*Second*, Uber's inaction has left **all but six** Petitioners languishing in arbitration purgatory. It has been more than three-and-a-half months since the first Petitioners served their individual arbitration demands, yet Uber has refused to pay the necessary fees to commence and administer the arbitration in all but a handful of cases. For the vast majority of demands, Uber's refusal to pay any fees means the arbitrations cannot even commence, let alone proceed to a preliminary hearing. Indeed, at the rate at which Uber is honoring its obligation to pay the initial arbitration fees, it would take approximately 10 years before the last Petitioner's arbitration even commenced. Until then, under the arbitration provision Uber has fought so hard to enforce, these thousands of Petitioners are barred from seeking relief elsewhere.

In short, Uber is leveraging its resource advantage to prevent its drivers from obtaining justice. This is by design—the culmination of a years-long fight to push its drivers out of court and into arbitration where, apparently, Uber intends to delay the proceedings indefinitely, until it unilaterally decides it is convenient (or perhaps financially beneficial) to move forward. Uber's conduct is inexcusable. No driver should be required to wait for such an unreasonable amount of time to resolve a dispute. This Court should grant this Petition and require Uber to abide by its agreement by timely paying the outstanding arbitration filing fees within thirty days of the filing of an arbitration demand by a Petitioner, and require Uber to pay the arbitrator's retainer fee within 14 days thereafter.

## II. BACKGROUND

### A. Uber's Arbitration Provisions.

As this Court is well aware, Petitioners' disputes with Uber arise out of one of two agreements: (1) the Raiser, LLC Technology Services Agreement; or (2) the Portier, LLC Technology Services Agreement. (Rigali Decl., Exs. A [Raiser Agreement]; B [Portier Agreement].) Both agreements contain an extensive arbitration provision, located in § 15.3 of each agreement. Both arbitration

- 6 -
PETITIONERS MARCIANO ABADILLA, ET AL.'S MOTION TO COMPEL ARBITRATION
CASE NO. 3:18-CV-07343

provisions allow drivers to opt out of arbitration. Petitioners elected not to invoke the opt-out provision.

The two agreements are nearly identical. For example, each agreement requires Petitioners to arbitrate "all disputes between you and the Company or Uber … including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company or Uber." (Rigali Decl., Ex. A at § 15.3(i); Rigali Decl., Ex. B at § 15.3(i).) In fact, under each agreement, the arbitration provision "applies to disputes regarding any city, county, state or federal wage-hour law … and claims arising under the … Fair Labor Standards Act … and state statutes, if any, addressing the same or similar subject matters, and all other similar federal, state and/or local statutory and common law claims." (*Id.*) As Uber itself has previously argued in this Court, arbitration demands like Petitioners' that allege employment misclassification fall within the scope of these provisions. (Rigali Decl., Ex. R [Yucesoy Motion to Compel] at 9 ["Here, there can be no reasonable dispute that Plaintiffs agreed to arbitrate each of the claims asserted in Plaintiffs' Fifth Amended Complaint: (1) misclassification of Plaintiffs as independent contractors…"].)

Moreover, both arbitration provisions state—in a section titled "Paying For The Arbitration"—that Petitioners "will not be required to bear any type of fee or expense that [they] would not be required to bear if [they] had filed the action in a court of law. ***Any disputes in that regard will be resolved by the Arbitrator as soon as practicable after the Arbitrator is selected, and Company shall bear all of the Arbitrator's and arbitration fees until such time as the Arbitrator resolves any such dispute.***" (*Id*. at § 15.3(vi).) This is consistent with the two provisions' delegation of questions of arbitrability to the arbitrator; each provision dictates that "disputes arising out of or relating to the interpretation, application, enforceability, revocability or validity of this Arbitration Provision, or any portion of the

Arbitration Provision" are to be decided by the arbitrator. (*Id.*) It also is consistent with Uber's representations to the Ninth Circuit, where it "has offered to pay the arbitration fees" to plaintiffs who had asserted employment-based claims. (Rigali Decl., Ex. C [Mohamed Opening Brief] at 42, n. 13; D [Mohamed Reply at 25].)

### B. Uber Has Aggressively Touted Arbitration's Benefits.

In its effort to remove its drivers' legal claims from courts to arbitration, Uber has repeatedly extolled the virtues of arbitration, the Federal Arbitration Act ("FAA"), and the FAA's policy favoring arbitration. It has, for instance, touted the "liberal federal policy favoring arbitration," which requires courts to "honor the parties' expectations" by enforcing arbitration provisions "according to their terms." (Rigali Decl., Ex. C at 27.) And it has sought to obtain reversal of a denied motion to compel arbitration because the "district court's decision expresses precisely the type of hostility toward arbitration that the [FAA] was enacted to prevent." (Rigali Decl., Ex. E [Meyer Opening Brief] at 10.)

Moreover, regarding arbitration's purported speed and efficiency benefits, Uber has explained that "the entire purpose of arbitration is to provide an inexpensive and expeditious means of resolving disputes." (Rigali Decl., Ex. F [Motion to Stay] at 18.) According to Uber, "the speed and efficiency of [arbitration] are the foundation for a strong federal policy favoring arbitration over litigation." (*Id.* at 15.)

### C. Uber Has Successfully Enforced Its Arbitration Provisions To Deny Class Treatment Of Petitioners' Causes of Action.

Uber has successfully argued in court that its arbitration provisions do not permit class arbitration.[1] (Rigali Decl., Ex. H [O'Connor Opening Brief] at 6.) It also has successfully argued that class treatment of claims related to its misclassification of its drivers is inappropriate. (*Id.* at 41-43.) Two Ninth Circuit

---
[1] While this argument relates to the 2013 and 2014 arbitration agreements, *see* Keller Decl., Ex. H at 6, which are not at issue here, the instant arbitration provisions contain the same class-waiver language. (*See* Keller Decl., Exs. A, B at § 15.3.)

decisions—*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) and *O'Connor*—set the backdrop against which Petitioners may pursue their disputes. In *Mohamed*, the Ninth Circuit reversed the district court's denial of Uber's motion to compel arbitration, finding that the question of arbitrability for all non-PAGA claims "was delegated to the arbitrator," and that the provisions' delegation clause was enforceable. *Mohamed*, 848 F.3d at 1206, 1211.

In *O'Connor*, the Ninth Circuit went further. Not only did the court rely on *Mohamed* to reverse the district court's orders denying Uber's motions to compel arbitration, but it expressly rejected the plaintiffs' arguments that the provisions' class-action waivers rendered the arbitration provisions unenforceable. *Id.* at 1093-1094. And because the order certifying the *O'Connor* class had been premised "upon the district court's conclusion that the arbitration agreements were not enforceable," the court reversed the certification order. *Id.* at 1094-95. As the Ninth Circuit explained, "[t]he class as certified includes drivers who entered into agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims. As we held in *Mohamed*, the question whether those agreements were enforceable was not properly for the district court to answer." *Id.* at 1094.

In light of these two decisions, Petitioners' only mechanism to challenge their misclassification and assert related claims is through individual arbitrations.

**D.    Petitioners' Arbitration Demands And Uber's Stalling Tactics.**

Petitioners have set in motion individual arbitrations just as Uber has long insisted are required by its agreements. (*See* Rigali Decl., Ex. A at § 15.3 (v) ["The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis"].)

In light of this, Petitioners served 12,501 individual arbitration demands on Uber, as follows:

- August 13, 2018 – 400 individual demands

- September 5, 2018 – 1,046 individual demands
- September 18, 2018 – 2,194 individual demands
- September 28, 2018 – 1,285 individual demands
- October 8, 2018 – 1,834 individual demands
- October 15, 2018 – 1,215 individual demands
- October 22, 2018 – 998 individual demands
- October 30, 2018 – 1,191 individual demands
- November 6, 2018 – 1,030 individual demands
- November 13, 2018 – 1,346 individual demands

(Rigali Decl., ¶ 3.)[2]

Four days after the first Petitioners served their demands, their counsel attempted to reach an agreement with Uber on an alternative process to administer the arbitrations. (Rigali Decl., Ex. I [W. Postman 8/17/2018 e-mail to S. Behnia].) Petitioners proposed a bellwether process, in which Uber and Petitioners' counsel would select nine bellwether arbitrations, with mediation to follow. (*Id.*) Two-and-a-half weeks later, Uber declined a bellwether process, proposing instead four individual arbitrations and no mediation. (Rigali Decl., Ex. J [S. Behnia 9/3/2018 e-mail to W. Postman].) That proposal was unworkable for Petitioners, who then elected to pursue their arbitrations through the JAMS procedure set forth in the arbitration provision. (*See* Rigali Decl., Exs. A, B at § 15.3 (iii).)

JAMS's procedure for commencing and then administering arbitrations provides helpful context. As Uber knows, its payment of the filing fee triggers the commencement of the arbitration. (*See* JAMS Comprehensive Arbitration Rules, Rule 5; *see also* Rigali Decl. Ex. Q [JAMS informing Uber that it cannot commence arbitrations until Uber pays filing fees].) To date, only 296 arbitrations have commenced. (Rigali Decl., Exs. K-M.) After the filing fee is paid, the parties

---

[2] Petitioners note that the sum of these demands—12,539—is slightly larger than the 12,501 demands that Petitioners base this Petition on. Some individuals asked counsel for Petitioners to withdraw their demands post-service, which accounts for the difference. (Rigali Decl., ¶ 3.)

appoint an arbitrator through a strike process. (Rigali Decl., Exs. A, B at § 15.3(iii).) This process is often time-consuming. Once this happens, JAMS invoices a retainer based on the arbitrator's professional fees for anticipated preparation time. (Rigali Decl., Ex. O [Retainer payment reminder]; Ex. T [JAMS Fee Schedule].)

On the first 47 arbitrations that commenced and then completed the strike process, it took Uber more than three months to pay the retainer for any of the arbitrations. (Rigali Decl., Ex. O.) And even then—after Petitioners incurred time in the strike process—Uber has paid the initial retainer for preliminary hearing activities for only *six* of the 47 arbitrations that have appointed arbitrators. (Rigali Decl., Exs. O, P.) Uber represented to Petitioners' counsel that it would "imminently" pay the remaining retainers on November 13, 2018, but it did not pay them. (Rigali Decl., Ex. P.) Thus, despite Uber's proclamation that the "entire purpose of arbitration is to provide an inexpensive and expeditious means of resolving disputes," its quest to resolve misclassification disputes in individual arbitration instead of a class action in court, *and* its knowledge of the effect of the non-payment of arbitration fees,[3] only six of Petitioners' demands are in a position to proceed toward a hearing.

Further, Uber has only paid the fees required to commence arbitration for 296 individuals out of the 12,501 who have served arbitration demands. (*See* Rigali Decl., Exs. C at 42, n. 13; D at 25; F at 18; K-M; O, P.) This means that in approximately 98% of the arbitrations that have been filed, Uber has not paid the necessary fees to commence arbitration. And of the 2% of demands that have turned into commenced arbitrations, Uber has paid the initial retainers for only 2%

---

[3] From the beginning, Uber has known that its failure to pay the filing fees has prevented the arbitrations from commencing. Indeed, throughout this process, JAMS has repeatedly e-mailed Uber, advising it that JAMS is "missing the NON-REFUNDABLE filing fee of $1,500 for each demand, made payable to JAMS." (Keller Decl., Ex. Q, capitals in original.) In these e-mails, JAMS has also informed Uber that "[u]ntil the Filing Fee is received we will be unable to proceed with the administration of these matters." (*Id*.)

of those. In other words, Uber has paid initial retainers for only .05%—one-twentieth of one percent—of the 12,501 Petitioners who have served arbitration demands. Some Petitioners served their demands as early as August 13, 2018, and have waited three-and-a-half months without *any* movement on their cases. (*See* Rigali Decl., ¶ 4.) At this rate, it will be approximately 10 years before all Petitioners have even begun arbitration, and far longer before all Petitioners even see a preliminary hearing. By comparison, Petitioners undoubtedly would be well into discovery and likely would have seen the resolution of certain motions if they had been permitted to file a lawsuit.

### III. <u>STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)</u>

Whether the Court should compel Uber to adhere to its arbitration provisions by requiring it to timely pay the outstanding arbitration filing fees within thirty days of the filing of an arbitration demand by a Petitioner, and require Uber to pay the arbitrator's retainer fee within 14 days thereafter..

### IV. <u>ARGUMENT</u>

As Uber has previously argued to the Ninth Circuit, this Court should "honor" the parties' expectations and enforce arbitration provisions according to their terms. Doing so is especially important here because class arbitration is unavailable under the arbitration provisions. Uber has successfully argued against class arbitration and a class action, but it now balks when faced with individual arbitrations. Uber's actions make clear it does not actually support arbitration; rather, it supports avoiding any method of dispute resolution, no matter the venue.

  **A. The Parties Have Entered Into A Valid Arbitration Agreement That Covers The Present Dispute.**

Under the Federal Arbitration Act, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Courts analyze two "gateway" issues in deciding whether to compel arbitration: (1) whether the parties have entered into a valid arbitration agreement; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).[4]

If the answer on both "gateway" issues is affirmative, "then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As detailed below, the parties have entered into a valid arbitration agreement that covers the present dispute, and so the Court must compel Uber to arbitrate Petitioners' disputes.

    1. <u>The parties have entered into a valid arbitration agreement</u>.

There is no question that the parties entered into a valid arbitration agreement; Uber has previously argued as much. (Rigali Decl., Ex. R [Yucesoy Motion to Compel] at 3, 8.) And in reversing the district court's denial of Uber's motion to compel arbitration, the Ninth Circuit has already ruled that the arbitration provision is enforceable. *Mohamed*, 848 F.3d 1201 at 1211.

    2. <u>The arbitration agreement covers the present dispute</u>.

The agreement also covers the present dispute. Except for certain disputes that do not apply here, such as disputes over intellectual property or worker's compensation, or PAGA claims, "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services shall be subject to arbitration pursuant to Section 15.3." (Rigali Decl., Exs. A, B at § 15.3(i).)

Here, Petitioners demand arbitration because Uber has misclassified them as

---

[4] Petitioners are permitted to institute a court action by petitioning to compel arbitration. *See, e.g., Unite Here Int'l Union v. Shingle Spring Band of Miwok Indians*, No. 2:16-cv-00384-TLN-EFB, 2016 WL 4041255, at *3 (E.D. Cal. July 25, 2016) ("[T]he Ninth Circuit and district courts in this circuit routinely treat petitions to compel arbitration as capable of instituting a court action"); *Bridgeport Mgmt., Inc. v. Lake Mathews Mineral Props., Ltd.*, No. 14-CV-00070-JST, 2014 WL 953831 at *3 (N.D. Cal. Mar. 6, 2014) (permitting petitioner to institute suit by filing petition to compel arbitration and treating petition as a motion).

independent contractors. (*See* Rigali Decl., Ex. S [Arbitration Demand].) This claim falls within the parties' agreement, which provides that "the relationship between the parties under this Agreement is solely that of independent contracting parties." (Rigali Decl., Exs. A, B at § 13.1.) Indeed, the very next section states that Petitioners "have no authority to bind Company or its Affiliates and [they] undertake not to hold [themselves] out as [] employee[s], agent[s] or unauthorized representative[s] of Company or its Affiliates." (*Id.* at § 13.2.)

But this Court does not need to take Petitioners' word for it. Uber has previously argued to this Court that claims for misclassification as independent contractors "arise[] out of Petitioners' relationship with Uber" and "are thus undoubtedly subject to the Arbitration Agreement, which applies, without limitation, to disputes arising out of or related to Petitioners' relationship with Uber and disputes regarding any city, county, state or federal wage-hour law." (Rigali Decl., Ex. R. at 9 ["Here, there can be no reasonable dispute that Plaintiffs agreed to arbitrate each of the claims asserted in Plaintiffs' Fifth Amended Complaint: (1) misclassification of Plaintiffs as independent contractors…"].)

### 3. Petitioners are following the Ninth Circuit's rulings in *Mohamed* and *O'Connor*.

Petitioners' individual demands represent the *only way* they can challenge their misclassification given *Mohamed* and *O'Connor*. In *Mohamed*, the Ninth Circuit reversed the district court's denial of Uber's motion to compel arbitration because "[t]he question of arbitrability as to all" non-PAGA claims—including the misclassification claim— "was delegated to the arbitrator." 848 F.3d at 1206. Thus, the district court "improperly assumed the authority to decide whether the arbitration agreements were enforceable." *Id.* And in *O'Connor*, the Ninth Circuit reversed class certification orders for Uber drivers because the "class as certified includes drivers who entered into agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims." 904 F.3d at

1094. By process of elimination, Petitioners' only route for vindicating their rights is through individual arbitrations.

### B. The Court Should Enforce The Arbitration Provisions And Require Uber To Timely Pay Outstanding Arbitration Fees.

In its bid to avoid class treatment and force all of its drivers into individual arbitrations, Uber represented to the Ninth Circuit that it is "committed to paying the full costs of arbitration." *Mohamed*, 848 F.3d at 1212 (9th Cir. 2016). It has made that representation both in its briefing to the Ninth Circuit (Rigali Decl. Ex. C at 42, n. 13; D at 25) and in its arbitration provisions. (Rigali Decl. Exs. A, B at § 15.3(vi).) Unfortunately, Uber has failed to live up to its commitment, having paid the filing fees for less than 2.5% (296/12,501) of Petitioners' demands. (Rigali Decl., Exs. K-M.) Uber still has not paid the necessary fees for Petitioners' demands from August 13, 2018, which have now been pending for more than three-and-a-half months, and Uber has not paid any fees for demands served on or after September 5. (Rigali Decl., ¶ 4.) Thus, thousands of individuals—many of whom were putative class members who were sent back to individual arbitration— are unable to arbitrate because Uber is consciously choosing to stall their arbitrations by not paying arbitration fees. At this point, it is fair to ask whether Uber's previous statements to the Ninth Circuit about its desire to facilitate arbitration with its drivers were nothing more than empty promises to avoid litigating a class action. Uber can't have it both ways. *See, e.g., Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 96 (2013) (giving defendant who refused to pay fees in arbitration against people unable to pay a choice: "elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim"); *Weiler v. Marcus & Millichap Real Estate Investment Servs., Inc.*, 22 Cal. App. 5th 970, 981, n. 3 (giving defendant same choice as in *Roldan* and expressing concern "with deep-pocketed parties leveraging their wealth to deprive their opponents of the right to resolve their

disputes"). Thus, this Court should require Uber to proceed immediately by paying Petitioners' arbitration fees.[5]

## V. CONCLUSION

For the foregoing reasons, Petitioners' petition to compel arbitration should be granted. The Court should require Uber to pay all currently outstanding filing fees within 30 days, require Uber to pay the arbitrator's retainer within 14 days of paying the filing fee, and require Uber to adhere to that schedule for any forthcoming individual arbitration demands.

Dated: December 5, 2018

LARSON O'BRIEN LLP

By: */s/ Stephen G. Larson*
    STEPHEN G. LARSON
    PAUL A. RIGALI
    R.C. HARLAN
Attorneys for Petitioners
MARCIANO ABADILLA, et al.

---

[5] Numerous courts have found conduct similar to Uber's here as breaching and/or waiving the arbitration provision, thereby precluding it from later seeking a stay under 9 U.S.C. § 3 or seeking to compel arbitration under 9 U.S.C. § 4. *See, e.g., Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (lifting stay following termination of arbitration based on party's refusal to pay fees despite multiple notices); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009-10 (9th Cir. 2005) (finding that defendant who "breached its [arbitration] agreement … by refusing to participate in the arbitration proceedings … cannot now enforce it"); *Sink v. Aden Enterprise*, 352 F.3d 1197, 1200 (9th Cir. 2003) (affirming district court's conclusion that defendant defaulted on arbitration agreement and holding that such default "precludes any attempt by [defendant] again to stay district court proceedings pending a further reference to arbitration"); *McLellan v. Fitbit, Inc.*, Case No. 3:16-cv-00036-JD, 2018 WL 3549042, at *2-6 (N.D. Cal. July 24, 2018) (refusing to follow *Sink*, *Brown*, and *Pre-Paid* only because defendant "paid its AAA fees in full" before triggering suspension but nevertheless sanctioning defense counsel for "delay[ing] and imped[ing] the arbitration on frivolous grounds"); *Rapaport v. Soffer*, No. 2:10-cv-00935-KJD-RJJ, 2011 WL 1827147, at *2-3 (D. Nev. May 12, 2011) (denying motion to stay and motion to compel arbitration after plaintiff filed complaint following termination of arbitration due to defendant's nonpayment of fees); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *1-2 (S.D. Fla. Aug. 18, 2010) (granting motion to reopen case after "Defendant persistently refused to timely pay its share of the arbitrator's fee, which resulted in the arbitrator dismissing the proceedings"); *Stowell v. Toll Bros*, No. 06-cv-2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007) ("admitted failure to remit the filing fee constitutes default").