STEPHEN G. LARSON (SBN 145225)
*Email:  slarson@larsonobrienlaw.com*
PAUL A. RIGALI (SBN 262948)
*Email:  prigali@larsonobrienlaw.com*
R.C. HARLAN (SBN 234279)
*Email:  rcharlan@larsonobrienlaw.com*
LARSON O'BRIEN LLP
555 S. Flower Street, Suite 4400
Los Angeles, California  90071
Telephone: (213) 436-4888
Facsimile:  (213) 623-2000

Attorneys for Petitioners
MARCIANO ABADILLA, et al.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MARCIANO ABADILLA, et al.<br><br>        Petitioners,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>        Respondent. | Case No. 3:18-cv-07343-EMC<br><br>**PETITIONERS' REPLY TO RESPONDENT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PETITIONERS' MOTION TO COMPEL ARBITRATION**<br><br>Date: February 14, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br><br>Action Filed: December 5, 2018 |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 3

       A.    This Court Has Statutory And Contractual Authority To Grant Petitioners'
             Motion. ............................................................................................................. 3

       B.    Uber's Opposition Confirms It Is Intentionally Refusing To Pay The Fees
             And Costs Necessary To Commence Arbitration. .................................................. 4

             1.    Excuse #1: Keller Lenkner's OSAAC Certificates .................................... 5

             2.    Excuse #2: Disqualification ...................................................................... 6

             3.    Excuse #3: Uber's unfounded concern with Petitioners' representation. .... 7

             4.    Excuse #4: Keller Lenkner's ability to prosecute the arbitrations ............. 8

       C.    Consistent With The Terms Of The Provisions And Uber's Representations To
             The Ninth Circuit, JAMS And Petitioners, The Court Should Require Uber To
             Pay The Total Filing Fee. ............................................................................... 10

             1.    Pre-Petition: Uber represents to JAMS and Claimants that it would pay
                   the full filing fee first and raise allocation issues second. ....................... 10

             2.    Post-Petition: Uber now seeks a consolidated decision on allocation
                   issues and refuses to pay the full filing fee. ........................................... 11

             3.    Thousands of Petitioners are exempt from paying arbitration fees. ......... 12

       D.    Uber's Self-Serving Disregard Of Its Own Arbitration Provisions Justifies A
             Broad Injunction From This Court. ................................................................. 12

III.   CONCLUSION ................................................................................................. 13

- i -

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ...............................................................................................13

6

*Carrizosa v. Stassinos*,
   No. C-05-2280 RMW (RS), 2006 WL 2529503 (N.D. Cal. Aug. 31, 2006).........................7, 8

7

8

*Clarke v. Am. Commerce Nat'l Bank*,
   974 F.2d 127 (9th Cir. 1992) ...............................................................................................7, 8

9

10

*O'Connor v. Uber Techs., Inc.*,
   No. 13-CV-03826-EMC, 2017 WL 3782101 (N.D. Cal. Aug. 31, 2017),
   *appeal dismissed*, No. 17-16859, 2017 WL 6398066 (9th Cir. Sept. 27, 2017)...................2, 6

11

12

13

**Federal Statutes**

14

9 U.S.C.
   § 4...............................................................................................................................3, 4, 10

15

16

Federal Arbitration Act.............................................................................................................3

17

18

**California Statutes**

19

California Code of Civil Procedure
   § 1284.2...................................................................................................................................5
   § 1284.3.................................................................................................................................12

20

21

22

23

24

25

26

27

28

1

## I.   __INTRODUCTION__

2

Uber's contract with its drivers requires "arbitration of *every* claim or dispute that

3

lawfully can be arbitrated," including "resolution of disputes that otherwise would be resolved in

4

a court of law or before any forum other than arbitration." Dkt. No. 3-2 at 18-19 (emphasis

5

added). Absent consent, dispute resolution must be by "an arbitrator through final and binding

6

arbitration on an individual basis only." *Id.* at 18.  For years, Uber has successfully invoked its

7

arbitration agreement to move class and individual actions from court to arbitration.  Uber has

8

unflinchingly enforced the provision prohibiting group or class arbitration to the letter.

9

Petitioners are 12,501 Uber drivers who, from August 2018 through November 2018,

10

filed individual demands for arbitration in compliance with Uber's contract. Petitioners noted in

11

their demands that Uber had stated to the Ninth Circuit that it was "committed to paying the full

12

costs of arbitration" for drivers. Each Petitioner therefore demanded that Uber submit the full

13

$1,500 filing fee required by JAMS to commence arbitration. Uber backed away from its

14

statements to the Ninth Circuit, responding that each Petitioner was obligated to pay $400 of the

15

JAMS fee.  But Uber acknowledged that its contract requires that "[a]ny disputes" regarding the

16

allocation of the filing fee "will be resolved by the Arbitrator as soon as practicable after the

17

Arbitrator is selected*, and the Company shall bear all of the Arbitrator's and arbitration fees*

18

*until such time as the Arbitrator resolves any such dispute.*"  Based on this language, Uber

19

repeatedly stated to Petitioners that it would advance the full filing fee and "file a motion on the

20

fee dispute once arbitrators are assigned."  Uber reiterated this same position in writing to JAMS:

21

"[P]er the terms of the December 2015 Rasier Technology Services Agreement, Uber will front

22

Claimants' portion of the filing fees, and then Uber *will raise this dispute with each arbitrator*

23

*once arbitrators are assigned.*"  JAMS adhered to the parties' contract and invoiced Uber for the

24

full filing fee for each individual demand filed by Claimants.  Uber paid a handful of those

25

invoices and repeatedly insisted that it planned to pay the rest.  But Uber did not pay.  Uber has

26

simply refused, for months, to pay the filing fees.

27

Now, faced with a motion to compel, Uber has completely reversed course, telling this

28

Court that it has not paid because the fee dispute must be resolved first, and on a collective basis.

1

PETITIONERS' REPLY TO RESPONDENT'S OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. 3:18-CV-07343-EMC

Before this motion to compel was filed, Uber never took that position with Petitioners or before JAMS.  Instead, Uber said repeatedly that it would abide by its contract and pay the full fee, including the disputed portion.  To this day, Uber has not asked JAMS to resolve the fee dispute collectively. It is therefore hard to see Uber's new position as anything but a post hoc rationalization, invented for the benefit of this Court to justify Uber's refusal to pay according to its contract.  Moreover, Uber's original position is unambiguously the correct one.  It must pay the full fee for each claimant and resolve its dispute as to Petitioners' portion with individual arbitrators.  And although Uber's opposition brief referred to a JAMS-issued stay of Uber's obligation to pay certain filing fees, JAMS has since "lifted" that stay, making clear that its rules "require that [it] collect a filing fee in each case to be pursued."  (Declaration of Tom Kayes ("Kayes Decl."), Ex. O [Jan. 23, 2019 JAMS Letter].) Without exception, every unpaid filing fee is now due and owing to JAMS.

Uber's other arguments, even if valid, raise disputes that can "lawfully be arbitrated" and thus must be sent to arbitration.  Dkt. No. 3-2 at 18; *see also O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *7–8 (N.D. Cal. Aug. 31, 2017), *appeal dismissed*, No. 17-16859, 2017 WL 6398066 (9th Cir. Sept. 27, 2017) ("The Court has serious questions about its authority to" disqualify counsel in "separate arbitration proceedings."). Uber's newfound preference for judicial relief conflicts with the terms of Uber's contract, Uber's own statements to Petitioners, and JAMS procedures as confirmed by that arbitral body. There is no doubt that questions concerning counsel's ability to represent claimants can be decided by an arbitrator, as Uber has raised those questions before those few arbitrators who have been empaneled. But as to the vast majority of Petitioners, their arbitrations cannot commence until JAMS receives the invoiced filing fees; and because JAMS has determined that Uber's contract means what it says, Uber must advance the full filing fees so that the arbitrations can commence.

The Court should grant this petition and give Uber the contract it wrote.  Uber has repeatedly, and successfully, insisted that drivers pursue individual arbitrations.  Now, it refuses to take yes for an answer.  Instead, what Uber wants is individual arbitration when it helps Uber avoid the specter of class-action liability, but group adjudication when it allows Uber to avoid its

drivers' claims.  That is an untenable "heads I win, tails you lose" position that finds no support in the plain and unambiguous terms of the parties' contract.  An order compelling arbitration— with Uber required to timely pay all fees—is now required.

## II.   ARGUMENT

### A.   This Court Has Statutory And Contractual Authority To Grant Petitioners' Motion.

Under the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Thus, the plain language of the FAA provides the Court with the authority to compel arbitration because Petitioners are parties "aggrieved by" Uber's "refusal" to arbitrate under its own "written agreement for arbitration."  *See id.*

Here, the Arbitration Provisions that Uber has consistently sought to enforce in this Court and the Ninth Circuit cover this dispute and expressly govern the conduct at issue: the payment of arbitration filing fees necessary to commence arbitration.  *See* Dkt. No. 3-2 at 21 ("In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law.  However, you will not be required to bear any type of fee or expense that you would not be required to bear if you had filed the action in a court of law.  ***Any disputes in that regard will be resolved by the Arbitrator as soon as practicable after the Arbitrator is selected, and Company shall bear all of the Arbitrator's and arbitration fees until such time as the Arbitrator resolves any such dispute***") (emphasis added).

JAMS has explicitly stated it will not "commenc[e] and appoint[] an arbitrator to each case" until "receipt of the filing fees" that Uber steadfastly refuses to pay.  (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].)  But JAMS does not possess the authority to compel Uber to pay the filing fees—only this Court does.  This Court should follow the plain terms of the parties' agreement to remedy Uber's breach of contract.  (Kayes Decl., Exs. D, O [Sept. 18, 2018 S.

1   Behnia email; Jan. 23, 2019 JAMS Letter]; 9 U.S.C. § 4.)

2        Attempting to obscure the issue, Uber argues that each party's share of fees is itself

3   arbitrable.  Opp. at 8-9.  Yet that is precisely the point.  No arbitrator can resolve Uber's fee

4   argument until an arbitration is commenced and an arbitrator is empaneled.  That is why Uber's

5   arbitration agreement unambiguously requires Uber to front the *entire* fee necessary to

6   commence arbitration and *then* raise its argument with the duly appointed arbitrator.  Dkt. No. 3-

7   2 at 21.  Only then can an arbitrator determine how much an individual petitioner may or may

8   not owe.  Until this motion was filed, Uber agreed.  (Kayes Decl., Ex. D [Sept. 18, 2018 S.

9   Behnia email].)[1]  It was right then and is wrong now.  If Uber wants to dispute a claimant's

10  portion of the filing fees, it must front the fee entirely so that an arbitrator can resolve the

11  dispute.

12       **B.**    **Uber's Opposition Confirms It Is Intentionally Refusing To Pay The Fees**

13               **And Costs Necessary To Commence Arbitration.**

14       Uber also argues that the Petition and this Motion are premature because "several critical

15  threshold issues … should be resolved before Uber is required to pay" *any* additional fees.  Opp.

16  at 9.  But the Arbitration Provisions require these threshold issues, too, to be decided by an

17  arbitrator, which of course can never happen if Uber continues to refuse to pay the necessary

18  filing fees.  And JAMS has confirmed that its "policies and procedures …require we collect a

19  filing fee in each case to be pursued."  (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].)

20       Uber offers four purported reasons why the Court should deny Petitioners' motion as

21  premature.  In reality, these are requests for judicial relief, on a group basis, of issues plainly

22  reserved for individual arbitrations.  Uber cannot escape the unmistakable requirements of its

23  own arbitration clause now that it suddenly prefers a judicial forum.  As Uber concedes, "each

24  arbitration is a separate and distinct case," and disputes relating to the "interpretation" or

25  "application" of the arbitration provisions must be resolved "on an individual basis only."  Opp.

26  at 10, n. 6; Dkt. No. 3-2 at 18.  That should be the end of the matter.  Indeed, JAMS has rejected

---

27  [1] Moreover, the very paragraph from which Uber quotes states that the arbitrator resolves
disputes "on an individual basis only."  Dkt. No. 3-2 at 18.  As such, under the Provisions, an
28  arbitrator can only issue orders (i) when the filing fee has been paid and (ii) only on an individual
basis.  *Id*.

1   Uber's attempt to seek group relief of these issues in front of a single arbitrator, expressly

2   finding that "the parties' arbitration agreement appears to clearly prohibit collective

3   determination of any issue absent party agreement." (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS

4   Letter].) This Court must follow suit. Each of Uber's excuses is one that—by Uber's own

5   admission—"lawfully can be arbitrated," and each must therefore be decided by a duly appointed

6   arbitrator on an individual basis. Uber must pay the filing fees in order for this to occur.

7                    **1.      Excuse #1: Keller Lenkner's OSAAC Certificates**

8           Uber's first excuse is that it should not be required to pay filing fees until Keller Lenkner

9   attorneys who are not admitted in California obtain approval by JAMS of Out-of-State Attorney

10  Arbitration Counsel ("OSAAC") certificates.  Opp. at 10. This argument is meritless and JAMS

11  has rejected it. (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].) Pursuant to the Arbitration

12  Provision, this is an issue to be decided by each arbitrator in an individual arbitration, so Uber's

13  attempt to obtain a class-type order on this issue is inappropriate. Dkt. No. 3-2 at 18-20.

14  Moreover, it is Petitioners, and not their counsel, who have made individual arbitration demands,

15  and Uber is obligated to pay filing fees for all individual arbitrations, regardless of who

16  represents them. Dkt. No. 3-2 at 21. That obligation flows to individual Petitioners as parties to

17  the underlying agreement and is not dependent on the identity of counsel. In fact, Uber would be

18  required to pay the filing fees even if Petitioners were unrepresented and proceeding *pro se*.

19          Setting aside that the delegation clause dictates that this is an issue for the individual

20  arbitrators, *see* Dkt. No. 3-2 at 19, and that it is inappropriate to seek a class-type order on this

21  issue, *see* Dkt. No. 3-2 at 20, Uber's excuse is misleading and puts the cart before the horse.

22  Under Section 1284.2 of the California Code of Civil Procedure, attorneys may submit the

23  necessary California OSAAC Certificate to an "arbitrator." (*See also* Kayes Decl., ¶ 70.) Keller

24  Lenkner attorneys who are not admitted in California and wish to appear in particular arbitrations

25  have timely submitted an OSAAC certificate for ***every arbitration in which an arbitrator has***

26  ***been assigned***—i.e., for the tiny fraction of arbitrations where Uber has honored its contract and

27  paid the necessary fees to empanel an arbitrator. (*Id.*) In a further attempt to delay arbitration,

28  Uber has objected to those OSAAC Certificates, which are pending before JAMS with respect to

                                                    - 5 –

1  40 individual arbitrations. But the statute does not require Keller Lenkner to prospectively file

2  these forms for arbitrations that have not yet commenced. Uber's first excuse is not only

3  procedurally improper, but it is hypothetical and premature.[2]

4  **2.**   **Excuse #2: Disqualification**

5  Uber's second excuse is that it should not be required to pay filing fees until JAMS

6  decides whether Keller Lenkner and/or Larson O'Brien must be disqualified. Opp. at 11. Once

7  again, this is an issue that can be lawfully arbitrated, so Uber must press its case once arbitrations

8  have been properly commenced. Uber itself has stated that *it will raise* this issue with the

9  individual arbitrators, and *it has raised* the issue in the select few arbitrations where it has paid

10 fees and an arbitrator has been appointed. Opp. at 11 ("Uber intends to file a motion with JAMS

11 seeking to disqualify [Keller Lenkner] from representing Petitioners if and when the stay of

12 proceedings is lifted."). This Court has likewise recognized that such issues, which reflect an

13 exercise of a tribunal's inherent authority to decide who appears before it, are issues for each

14 arbitrator. *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *7–8

15 (N.D. Cal. Aug. 31, 2017), *appeal dismissed*, No. 17-16859, 2017 WL 6398066 (9th Cir. Sept.

16 27, 2017) (stating that the Court had "serious questions" about its ability to disqualify counsel

17 "in separate arbitration proceedings"). And JAMS has refused Uber's repeated request that

18 disqualification be decided on a group basis before Uber is required to pay individual filing fees.

19 (*See* Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].)

20 Setting that aside, Uber's second excuse is flawed for a number of reasons. Most

21 fundamentally, Uber is incorrect that any disqualification "would impact the continuing viability

22 of this action and the underlying arbitrations." Opp. at 11. Attorneys are replaceable; and

23 Petitioners' claims cannot be dismissed or avoided simply because new attorneys should be

---

24 [2] Uber has also used arguments about multi-jurisdictional practice in arbitrations that have not
commenced as an excuse for withholding payment in Massachusetts and Georgia. (Kayes Decl.,
25 ¶ 71.) Uber has even asserted that Keller Lenkner should be prohibited under unauthorized-
practice-of-law rules from filing demands in New York, despite the fact that nearly half of the
26 firm's attorneys—including the attorney who filed the demands—are admitted to practice in
New York. (*Id.*) JAMS has appropriately refused to consider these arguments, noting that they
27 are for individual arbitrators to decide, which cannot happen until Uber pays the necessary fees.
28 (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].)

1    involved.[3]  Uber is effectively arguing that if Keller Lenkner and/or Larson O'Brien cease to

2    represent Petitioners, their claims will disappear.  That is false.  Moreover, Uber's concerns

3    about Larson O'Brien receiving confidential information from Keller Lenkner and/or Warren

4    Postman, *see* Opp. at 11, are unfounded and unsupported.  No Larson O'Brien attorney has

5    communicated with Mr. Postman about this matter.  (Kayes Decl., ¶ 27.)  The only information

6    that Larson O'Brien has received from Keller Lenkner relates to the procedural history relevant

7    to this motion.  (*Id.*)[4]

8                      **3.      Excuse #3: Uber's unfounded concern with Petitioners'**

9                               **representation.**

10            Uber's third excuse is that it should not be required to pay filing fees until it conducts

11   discovery into whether Petitioners have properly retained Keller Lenkner and Larson O'Brien to

12   represent them.  Opp. at 11.  But whether Keller Lenkner properly represents arbitration

13   claimants is an issue that can lawfully be arbitrated, so Uber cannot seek or obtain judicial relief.

14   *See* Dkt. No. 3-2 at 18-19.  Regardless, Uber has introduced no evidence—not a shred—that

15   Petitioners did not properly retain counsel.  Keller Lenkner has a signed retainer with every one

16   of its clients, and pursuant to its authority under those retainers, Keller Lenkner affiliated with

17   Larson O'Brien for purposes of this petition and motion to compel. Uber's argument is based

18   entirely on its counsel's unsupported rhetoric in a brief suggesting that Petitioners' counsel do

19   not have authority to act for them.  If rhetoric in a brief, devoid of record evidence, could bring

20   litigation to a halt while a defendant obtained discovery into its adversary's relationship with

21   opposing counsel, that would make a mockery of the adversarial process. In any event, Uber's

22   obligation to pay filing fees flows to Petitioners and does not depend on who represents them.

23           Uber's reliance on *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.

24   1992) and *Carrizosa v. Stassinos*, No. C-05-2280 RMW (RS), 2006 WL 2529503, at *3 (N.D.

25   _____

     [3] Under JAMS's rules, Petitioners could represent themselves in these arbitrations.  *See* JAMS

26   Streamlined Arbitration Rules & Procedures 1(e) (defining "Party" as including "Parties to the
     Arbitration and their counsel or representatives"); 9(a) ("The Parties ... may be represented by

27   counsel or any other person of the Party's choice").
     [4] For its part, Keller Lenkner is making arrangements with other attorneys to refer these matters

28   to them. (Kayes Decl., ¶ 51.)  Larson O'Brien was retained for the limited purpose of bringing
     this Petition and will not represent Petitioners in any arbitration.

1   Cal. Aug. 31, 2006), is misplaced. *Clarke* stands for the unremarkable proposition that

2   superficial attorney-client communications are not privileged. 974 F.2d at 129. And *Stassinos*

3   held simply that fee agreements generally are not privileged. 2006 WL 2529503 at *3. But this

4   is not a discovery fight, it is a motion to compel arbitration. Even if Keller Lenkner's fee

5   agreements could be discoverable once arbitration commences—assuming their discovery

6   somehow could lead to information relevant to Petitioners' claims—that has no bearing on

7   whether arbitration should commence in the first place.

8          Uber's only factual support for its complaints about Keller Lenkner—its supposed

9   "smoking gun" example of invalid attorney retentions—is a case of mistaken identity. Uber

10  contends that "one of the ***very same*** individuals Larson O'Brien purports to represent has filed

11  suit ***against*** Keller Lenkner." Opp. at 12 (original emphasis).[5] Uber is referring to a lawsuit

12  filed in Massachusetts by a Connecticut resident named Derrick Brown. But that Derrick Brown

13  is not a Petitioner in this matter; he has never been represented by Larson O'Brien; he is no

14  longer a client of Keller Lenkner's; and he has never demanded arbitration against Uber. (Kayes

15  Decl., ¶ 55.) Larson O'Brien and Keller Lenkner do represent an individual named Derrick

16  Brown, but he resides in Stockton, California, not Connecticut. (*Id.* at ¶ 56.) Uber knows this.

17  Its counsel has received client lists that unequivocally state that the ***only*** petitioner in this matter

18  named Derrick Brown resides in California. (*Id.* at ¶ 57.)[6]

19                    **4.    Excuse #4: Keller Lenkner's ability to prosecute the arbitrations**

20         Uber's fourth excuse is that it should not be required to pay filing fees because Keller

21  Lenkner purportedly is unable to prosecute the existing arbitrations. Opp. at 12. It is heartening

22  to know that Uber cares about the quality of representation claimants will receive from their

23  lawyers. But Uber has no standing to raise this issue, and its arbitration clause does not contain a

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5] Uber also misleads the Court concerning the effect the *Brown* complaint has had on Claimants
25  withdrawing their demands. Opp. at 7, n. 3. For one, less than one-third of one percent of
    Claimants have asked Keller Lenkner to withdraw their demands. (Kayes Decl., ¶ 74.) And
26  second, the most common concern among drivers withdrawing their demands is that they will
    face retaliation by Uber if they do not withdraw. (*Id.* at ¶ 75.)
27  [6] Keller Lenkner disputes the factual allegations in the *Brown* complaint, (Kayes Decl., ¶ 58-59),
    which of course are not admissible for the truth of their assertions in this action. Moreover, the
28  summons and complaint in that case, which was filed more than 60 days ago, still have not been
    served. (*Id.* at ¶ 60.)

"my adversary's counsel is incompetent" escape hatch.  Dkt. No. 3-2 at 19.  As with its other excuses, Uber can raise any concerns about counsel's ability to prosecute these arbitrations with duly appointed arbitrators on an individual basis.  If Uber's arguments were true, that would only inure to its advantage, as a failure to effectively prosecute a claim is no way to maximize a claimant's recovery.

Setting aside the complete procedural impropriety of this argument, Uber's position is a baseless smear that rests on a misrepresentation of the record.  Its only support is that Keller Lenkner once had to issue a second strike list, and that Keller Lenkner once was unavailable for a specific hearing date.  Opp. at 12.  Uber paints an incomplete picture on both points.

First, Keller Lenkner has issued more than 390 arbitration strikes on behalf of claimants, and has generally done so within 24 to 48 hours of receiving Uber's strikes.  (Kayes Decl., ¶ 66.) To suggest that one incident of taking additional time on five strikes says anything about Keller Lenkner's ability to manage the arbitrations more broadly—especially considering that Uber has repeatedly taken more time to make its own strikes—is nonsense.  (Kayes Decl., ¶ 67.)

Second, Uber uses a scheduling conflict for a single arbitration hearing as purported evidence of Keller Lenkner's inability to manage the arbitrations.  Opp. at 12.  But what Uber fails to tell the Court is that the hearing in question was on a planned motion by Uber to disqualify Keller Lenkner based on Mr. Postman's work for the U.S. Chamber of Commerce. (Kayes Decl., ¶ 67.)  At the direction of the arbitrator, Mr. Postman's attendance at that hearing was mandatory because he was to be a live witness.  (*Id.*)  Uber knew this, so its suggestion that Keller Lenkner "was unable or unwilling to identify another attorney from the firm able to attend a single motion hearing in February 2019" is disingenuous at best.  (*See* Declaration of Sophia Behnia, ¶ 5.)  Uber's lawyers have pushed multiple calls and hearing deadlines.  On this very motion, they even extended the briefing deadline for the Opposition.  This is the normal scheduling process in litigation for busy professionals, not a reflection of Littler's competence as a law firm.

Petitioners provide this brief account to contextualize Uber's distortion of the record.  But at bottom, none of that controls the question presented by this motion.  All four of Uber's

excuses address matters that fall squarely within Uber's delegation clause and must therefore be resolved by an arbitrator on an individual basis.  In order to have that individualized, arbitral resolution, arbitration must commence so that individual arbitrators can be appointed.  And in order for arbitration to commence, Uber must, at long last, honor its contractual obligations and pay the required filing fees.  The Court should order Uber to do so. *See* 9 U.S.C. § 4 (permitting courts to issue "an order directing that such arbitration *proceed in the manner provided for in such agreement*") (emphasis added); *see also* Dkt. No. 3-2 at 19, 21.

C.      **Consistent With The Terms Of The Provisions And Uber's Representations To The Ninth Circuit, JAMS And Petitioners, The Court Should Require Uber To Pay The Total Filing Fee.**

As discussed above, Uber's final argument—that this court should determine that it is only required to pay $1,100 of the $1,500 filing fee—is perhaps its most cynical.  The Arbitration Provisions provide that "[a]ny disputes" regarding apportionment of the filing fee "will be resolved by the Arbitrator as soon as practicable *after* the Arbitrator is selected, and *Company* shall bear *all* of the Arbitrator's and arbitration fees until such time as the Arbitrator resolves any such dispute."  Dkt. 3-2 at 21 (emphasis added).  Uber cannot obtain a "collective determination" of this issue; instead, per the Arbitration Provisions, Uber must pay the complete filing fee for a given petitioner before it obtains any ruling relating to that petitioner.  (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].)  Further, Uber's position on what its own Arbitration Provisions mean has shifted throughout the course of this dispute.

1.      **Pre-Petition: Uber represents to JAMS and Claimants that it would pay the full filing fee first and raise allocation issues second.**

Before the Petition, Uber's counsel repeatedly represented to JAMS and Claimants *that it would pay the total filing fee* in the first instance, leaving it for the arbitrator to decide whether Petitioners must pay $400 per demand.  (Kayes Decl., Exs. B-F [Sept. 5, 2018 S. Behnia e-mails; Sept. 18, 2018 S. Behnia e-mail; Oct. 3, 2018 S. Behnia e-mail; Oct. 10, 2018 S. Behnia e-mail].)  For example, in October 2018, Uber represented to JAMS that it "will front Claimants' portion of the filing fees, and then Uber will raise this dispute with each arbitrator once arbitrators are

- 10 –

1   assigned."  (Kayes Decl., Ex. E [Oct. 3, 2018 S. Behnia e-mail].)   Uber made the same

2   representations to Petitioners.  On September 5, 2018, mere weeks after the first Petitioners

3   served their arbitration demands, Uber represented to Petitioners that "we can work with JAMS

4   on logistics and filing fees (we will raise the fee dispute with the arbitrators once they are

5   assigned)."  (Kayes Decl., Ex. B [Sept. 5, 2018 S. Behnia e-mail].)  Uber reiterated this position

6   a month later, explaining that by the time it would have deposed Petitioners, "***Uber will already***

7   ***have paid filing fees***, taken time to select an arbitrator, attended an initial arbitration

8   management conference," and more.  (Kayes Decl., Ex. F [Oct. 10, 2018 S. Behnia e-mail]

9   [emphasis added].)

10                      **2.      Post-Petition: Uber now seeks a consolidated decision on allocation**

11                              **issues and refuses to pay the full filing fee.**

12          But, of course, Uber has refused to pay filing fees, necessitating the instant Petition and

13   Motion.  Now, in response to Petitioners' motion, Uber has completely backtracked, seeking a

14   consolidated order from JAMS on how much of the filing fee it must pay in all arbitrations

15   brought by any Petitioner.  Opp. at 5-6; Kayes Decl., ¶ 30 [indicating that before the Petition,

16   Uber never asked Claimants to submit the filing fee dispute to a single arbitrator for a

17   consolidated order].  *Compare* Dkt. No. 3-2 at 21 ("Company shall bear all of the Arbitrator's

18   and arbitration fees until such time as the Arbitrator resolves any [] dispute" over allocation of

19   filing fees), *and* Kayes Decl., Ex. E [Oct. 3, 2018 S. Behnia e-mail] ["[P]er the terms of the

20   [Arbitration Provisions], ***Uber will front Claimants' portion of the filing fees***, and then Uber

21   will raise this dispute with each arbitrator once arbitrators are assigned"], *with* Kayes Decl., Ex.

22   N [Jan. 24, 2019 Uber Letter] ["Per the terms of the Arbitration Provision between Uber and

23   each Claimant … each Claimant is required to pay the remaining $400 of the filing fee"].)

24          As Uber notes, Larson O'Brien rejected Uber's proposal that the parties submit the filing

25   fee dispute to JAMS for resolution.  Opp. at 6.  JAMS has now rejected that proposal as well.

26   (Kayes Decl., Ex. O [Jan. 23, 2019 JAMS Letter].) Larson O'Brien rejected the proposal for two

27   simple reasons.  First, as explained above, the Arbitration Provisions expressly require Uber to

28

1   pay the full filing fee if there is any dispute regarding the allocation of the filing fee.[7]  Second, in

2   repeatedly asking JAMS for consolidated orders, Uber has shown it is willing to depart from

3   individualized arbitrations only where doing so benefits Uber.  Petitioners had previously offered

4   to engage in an alternative process under which Uber would participate in nine bellwether

5   arbitrations, then engage in a mediation regarding the rest of Petitioners' claims, and then, absent

6   a global resolution, allow a single arbitrator to extrapolate the result of those arbitrations to all

7   other Petitioners.  (Kayes Decl., Ex. A at 7-9.)  But Uber rejected that proposal, insisting that it

8   would not allow determinations in any one arbitration to control determinations in any other.

9   Petitioners are not willing to submit to group resolution only for matters of Uber's choosing.

10   Uber's request for a consolidated ruling on fees did not succeed in front of JAMS, *see* Kayes

11   Decl., Ex. O [Jan 23. 2019 JAMS Letter], nor should it succeed here.

12              **3.     Thousands of Petitioners are exempt from paying arbitration fees.**

13              Finally, not only would a class-type order requiring Petitioners to pay $400 of the filing

14   fee violate the terms of the Provisions and contradict countless of Uber's prior statements, but it

15   would also be inappropriate in light of thousands of California Petitioners submitting arbitration

16   fee waivers.  Section 1284.3 of the California Code of Civil Procedure provides that individuals

17   making less than 300 percent of the federal poverty guidelines are not required to pay any

18   arbitration fees.  In order to avail itself of the statute, a driver must only submit to the arbitral

19   forum a declaration stating that he or she qualifies for the provision.  Cal. Code Civ. Proc. §

20   1284.3.  To date, Keller Lenkner has received more than 3,700 (and counting) of these fee

21   waiver declarations.  (Kayes Decl., ¶ 33.)  These facts alone underscore why these decisions

22   must be made in individual arbitrations.

23         **D.     Uber's Self-Serving Disregard Of Its Own Arbitration Provisions Justifies A**

24              **Broad Injunction From This Court.**

25              Between its refusal to pay filing fees and its quest to obtain class-wide orders from JAMS

---

[7] Uber also has had a change of heart about whether Petitioners have even raised a filing fee
dispute, now contending that filing fee disputes occur only when there are "*bona fide* challenges
about a claimant's legal obligation to bear the costs of arbitration."  Opp. at 14, n. 10.  This is a
post hoc rationalization that directly contradicts Uber's previous conduct and communications to
JAMS.

on various issues it deems beneficial, it is clear that Uber follows its Arbitration Provisions only when it is convenient.  Uber's conduct warrants broad injunctive relief from this Court.  In order for Petitioners' claims to proceed to an arbitrator, Uber must promptly pay (1) the filing fees JAMS has invoiced as necessary to commence each Petitioner's arbitration and (2) the arbitrator retainers that JAMS requires before an arbitrator will begin work on each Petitioner's arbitration. Given the extent of Uber's efforts to avoid its own arbitration clause through any means, no matter how far-fetched or meritless, it is important that this Court issue clear and firm injunctive relief.

Allowing Uber to benefit from its decision to not abide by its own Arbitration Provisions—either by denying the motion or by permitting Uber to continue to avoid its obligations—would create a "perverse incentive scheme" in which Uber "would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them." *Brown*, 430 F.3d at 1012.  That is precisely what is happening here: Uber is refusing to pay, with the hope that Petitioners will give up and walk away.  Requiring Uber to timely pay the arbitration filing fees would be consistent with the Ninth Circuit's policy of "declin[ing] to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings," *id.,* while at the same time enforcing the plain terms of the Arbitration Provisions.

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted. The Court should require Uber to pay all currently outstanding filing fees within 30 days and, after arbitrators are selected in those matters, require Uber to pay the arbitrator's retainer within 14 days of JAMS issuance of the notice of appointment.   Any other result would allow Uber to avoid its contractual obligations, and deny its drivers any forum to adjudicate their disputes.

///

///

///

1    Dated: January 24, 2019                    LARSON O'BRIEN LLP

2

3                                               By:   /s/ Stephen G. Larson
                                                      STEPHEN G. LARSON
4                                                     PAUL A. RIGALI
                                                      R.C. HARLAN
5
                                                Attorneys for Petitioners
6                                               MARCIANO ABADILLA, et al.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITIONERS' REPLY TO RESPONDENT'S OPPOSITION TO MOTION TO COMPEL ARBITRATION
CASE NO. 3:18-CV-07343-EMC